# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CHERYL LYNN TIMMONS,**  )  )  **Plaintiff,**  )  )  **v.**  )  )  **SOCIAL SECURITY**  )  **ADMINISTRATION,**  )  **COMMISSIONER,**  )  )  **Defendant.**  ) | Civil Action Number **5:17-cv-00224-AKK** |

## MEMORANDUM OPINION

Cheryl Lynn Timmons brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.   Procedural History

Timmons worked for the Alabama Department of Finance for more than 10 years until she stopped working in December 2013 at age 51 due to her alleged

disability. Docs. 3-6 at 15-19; 3-7 at 19. Timmons filed her application for Disability Insurance Benefits ("DIB") on November 25, 2013, doc. 3-4, asserting that she suffered from a disability beginning on November 5, 2013 and caused by several disabling impairments, including major depression disorder, anxiety, fatigue, and insomnia. *Id.* at 2-3. After the SSA denied her application, doc. 3-4 at 15-16, Timmons requested a formal hearing before an ALJ. Doc. 3-3 at 90. Ultimately, the ALJ entered a decision finding that Timmons was not disabled. Doc. 3-3. The Appeals Counsel affirmed, rendering the ALJ's decision the final decision of the Commissioner. *Id*. Having exhausted her administrative remedies, Timmons filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 5.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id*. (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify, a

3

claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is doing substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that step one was satisfied because Timmons was not engaged in substantial gainful activity between January 1, 2014 and September 18, 2015. Doc. 3-3 at 34-35. At step two, the ALJ found that Timmons has "severe impairments" caused by major depressive disorder, bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder, and personality disorder. Doc. 3-3 at 35. At step three, the ALJ considered whether Timmons had any of the following mental disorders between November 5, 2013 and October 26, 2015: (1) affective disorders; (2) anxiety related disorders; or (3) personality disorders. 20 CFR Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08.[1] The ALJ concluded that Timmons's impairments, considered singly or in combination, did "not meet or medically equal the criteria of listings" in 20 CFR Part 404, Subpart P, Appendix 1. Doc. 3-3 at 34-37.

---

[1] The SSA recently amended the criteria for "mental disorders" through formal rulemaking, and the new listings became effective January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01. The revised criteria renamed these respective listings to the following: (1) depressive, bipolar and related disorders; (2) anxiety and obsessive-compulsive disorders; and (3) personality and impulse-control disorders. *Id.*

Next, the ALJ determined Timmons's residual functional capacity ("RFC") and found that Timmons "can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes." Doc. 3-3 at 46-47. Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Timmons could not return to her past relevant work as an eligibility worker and loan clerk. *Id*. The ALJ then proceeded to step five, where based on Timmons's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Timmons is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including housekeeping, assembly work, and laundry work. *Id*. As a result, the ALJ concluded that Timmons was not disabled from the alleged onset date through the date of her decision. *Id*.

## V. Analysis

On appeal, Timmons argues that (1) the ALJ failed to properly weigh the opinions of Timmons's treating and examining physicians and relied instead on the opinions of non-examining consultative physicians, doc. 5 at 5-16, and (2) that the Appeals Council should have vacated the ALJ's decision in light of new, material evidence she submitted, *id.* at 16-17. The court addresses each contention in turn.

A. <u>Whether the ALJ erred by failing to properly weigh the opinions of Timmons's treating and examining physicians</u>

Timmons argues that the ALJ erred by affording "little weight" to the reports of Dr. Marie Cebert (treating physician), Dr. Danny Blanchard (treating physician), and Dr. William Confer (non-treating consultative physician), and by failing to state what, if any, weight she gave to those of Dr. Trevor Lindsay (treating physician) and Dr. Heath Penland's (treating physician). Docs. 3-8 at 13-56; 3-9; 3-10 at 1-41, 69-76; 3-12; 3-13 at 1-15, 21-25; 3-11; 3-13 at 17-20; 5 at 7-8. The court disagrees.

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.* A failure to do so constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Timmons argues that the ALJ should have given more weight to the opinions of Drs. Lindsay, Cebert, Blanchard, and Penland,[2] who documented her medical history and wrote letters opining that she was unable to work due to her mental problems. Doc. 5 at 12. Although their letters and records indicate that Timmons's previous job impacted her health, each doctor recommended different workplace adjustments for Timmons. Specifically, in light of Timmons's depression, suicidal thoughts, and panic attacks, Dr. Cebert recommended that Timmons take medical leave or reduce her work schedule, docs. 3-12 at 90; 3-8 at 53, whereas Dr. Blanchard opined that Timmons was not capable of continued employment and suggested retirement, doc. 3-8 at 23. As for Dr. Lindsay, he diagnosed Timmons with major depressive disorder and anxiety disorder, and noted that Timmons's hallucinations of demons caused her to "struggle" at her job making her question whether she could continue working. Doc. 3-9. To the extent that Timmons is maintaining that these opinions establish her disability, these opinions are not dispositive on the issue of whether Timmons is unable to maintain any steady employment. As the ALJ noted, these assessments are not medical opinions, but are instead legal issues reserved for the Commissioner. *See* 20 C.F.R.

---

[2] Dr. Penland's December 2015 evaluation, where he opines that Timmons is unable to work, will be addressed in Section B, *infra*, as Timmons raised it as new evidence to the Appeals Council. As for the period relevant to the ALJ's decision, the ALJ noted that Timmons met with Dr. Penland in April 2015 around the time Timmons learned she had limited time remaining to obtain "SSDI/Medicare." Doc. 3-3 at 41. At the time, Dr. Penland increased Timmons's medication and noted that she was "cooperative" and "calm" while exhibiting "good memory, attention, and concentration." *Id*.

§ 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 Fed. Appx. 656, 659 (11th Cir. 2017); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"). As such, the ALJ did not err when she rejected these opinions.

Moreover, in her decision, the ALJ extensively considered these treating physicians' opinions and detailed her "good cause" for discounting them. *Lamb*, 847 F.2d at 703. For example, the ALJ noted that in a July 2012 letter[3] for reasonable workplace accommodations, Dr. Cebert recommended that Timmons reduce her weekly work schedule but offered no explanation other than Timmons's "health has suffered greatly due to her job requirements." Doc. 3-12 at 90. The ALJ explained that she gave "little weight" to Dr. Cebert's opinion because the medical record as a whole also showed that Timmons "needed no changes in therapy, as she was reacting well and feeling good." Docs. 3-3 at 45. Indeed, the medical records from Dr. Blanchard that the ALJ cited repeatedly note this fact. *See* doc. 3-8 at 25-46. In other words, the records are inconsistent with the extent of physical limitations described by Dr. Cebert, and those inconsistencies provide

---

[3] Similarly, in a June 2012 examination, Dr. Cebert noted that Timmons "need[s] medical leave" and exhibited "fatigue" and "depression." Doc. 3-8 at 53. During a May 2012 examination, Dr. Cebert notes that Timmons felt like she was having a "nervous breakdown" because her employer required her to "process claims for [seven] counties" and review "42 claims per month." *Id.* at 54.

9

good cause to discount the opinions. *See* 20 C.F.R. § 404.1527(c)(3), (c)(4); *Phillips*, 357 F.3d at 1241 (explaining that good cause to discount a treating physician's opinion is shown when that "opinion was . . . inconsistent with the doctor's own medical records").

The second treating physician's opinion Timmons challenges the ALJ on is that of Dr. Blanchard, who wrote a letter opining that Timmons was "not capable of continued employment" because her "conditions are very serious" and she cannot continue "her job expectations."[4] Doc. 3-8 at 23. The ALJ explained that she afforded "little weight" to this opinion because Timmons's treatment progress reports repeatedly indicated that her mental status was "normal," she appeared "well groomed," her affect was "appropriate," her participation was "active," her mood was "normal," and that she was "doing well and responding appropriately" to treatment and there are "no major problems at this time." *Id*. at 30-45. A review of the record and treating notes support the ALJ's decision to cast doubt on Dr. Blanchard's assessment of Timmons being incapable of performing any work.

As for the third treating physician Timmons cites, Dr. Lindsay, the ALJ afforded little weight to his opinion because Dr. Lindsay's records consisted mostly of "billing dates" and "military leave statements." Doc. 3-3 at 40. The

---

[4] In an October 12, 2012 letter, Dr. Blanchard opined that Timmons's "work hours be reduced" and urged her workplace to "reassign her to a similar position with fewer requirements" in order to "help her stabilize." Doc. 3-12 at 99.

ALJ pointed out also that Dr. Lindsey's limited records indicated that Timmons displayed an "appropriate affect," exercised and regularly completed house chores even though she "had hallucinations about demons bothering her in her sleep." *Id*. Again, when the medical opinion is inconsistent with the medical record as a whole, good cause exists for the ALJ to discount the opinion. *Phillips,* 357 F.3d at 1241.

Timmons also takes issue with the ALJ's decision to give little weight to her non-treating consultative physician, Dr. Confer, who met with her and reviewed her medical files. Docs. 3-3 at 10-13; 3-13 at 26-32; 3-10 at 62-68. Based on a disability evaluation he performed, Dr. Confer opined that Timmons was "unlikely" to "deal with normal pressures in a competitive work setting." Doc. 3-10 at 63-67. Despite this assessment, Dr. Confer stated also that Timmons appeared "docile" and "likely quite cooperative in the workplace." *Id*. at 67. In that same evaluation, as the ALJ noted, Dr. Confer opined that Timmons participates in regular activities such as removing old carpet, general cleaning, house repairs, riding a lawn mower, laundry, grocery shopping, watching television, attending church, and gardening. Docs. 3-10 at 66-67; 3-3 at 44-45. Dr. Confer also described Timmons's ability to recall events, appropriate abstractions, and average intelligence. Doc. 3-3 at 42. Accordingly, the ALJ offered little weight to these opinions for their inconsistency with Timmons's "record as a

whole," which detailed her regular active schedule and ability to complete household tasks. Doc. 3-3 at 40. In other words, the ALJ provided good cause for her treatment of Dr. Confer's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *Mullen v. Acting Comm'r of Soc. Sec.*, 723 F. App'x 970, 972 (11th Cir. 2018) (affirming the ALJ's decision to disregard the medical opinion that was inconsistent with the record related to that time period).

Relatedly, Timmons contends that the ALJ erred by giving "great weight" to the non-examining physician, Dr. Angela Register, and non-treating physician, Dr. Andrea Viegas, even though they purportedly failed to review Timmons's entire medical record. Thus, Timmons contends that the ALJ's decision "should raise flags of skepticism." Doc. 5 at 7-8, 13. The court disagrees. Even if the "non-examining doctor" is unable to review all of Timmons's records before making functional determinations, the ALJ commits no error if she "considered *all of the evidence* in the record" in affording "great weight" to their opinions. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (emphasis added). As the ALJ noted, she gave their opinions "great weight" because they were based on the entire record and not just "subjective reports of symptoms" and "snaphot[s] of the individual's functioning." Doc. 3-4 at 13-16. *See Forsyth v. Comm'r of Soc. Sec.,* 503 F. App'x 892, 893 (11th Cir. 2013) (holding that the ALJ did not improperly give more weight to the non-examining specialist due to the

inconsistency of the treating physician's opinion). Both doctors opined that although Timmons experienced depression and anxiety, she preferred "solitary activity" and can perform "simple routine tasks" that required "simple instructions." Doc. 3-3 at 46. Consistent with the treating physicians' records of Timmons's ability to perform home chores and errands, the ALJ afforded more weight to Dr. Register's nuanced opinion[5] that Timmons had "mild restrictions of daily living," could maintain concentration for "at least 2 hours at a time," and could complete tasks with repetition. *Id.* at 47. *See* 20 C.F.R. § 404.1527(c)(4); *Mullen*, 723 F. App'x at 972.

In light of the "evidence of the record" and medical opinions indicating that Timmons found "her previous skilled job and work environment stressful," the ALJ ultimately concluded that Timmons could perform "simple tasks" and was "capable of making a successful adjustment to other work."[6] *Id.* at 46-48. *See Lindsey v. Comm'r of Soc. Sec.*, 2018 WL 3369170, at *2 (11th Cir. July 10, 2018)

---

[5] Although Timmons experiences restrictions on social functioning, concentration, and social interactions with the general public, Dr. Register noted that these limitations are moderate and that Timmons is able to maintain "superficial social interactions in [the] work setting" and handle "simple, routine tasks." Docs. 3-3 at 43; 3-4 at 1-16. As a result, Dr. Register offered a more nuanced recommendation that Timmons find a job where "changes in the work setting" are infrequent to "avoid build-up of stress resulting in anxiety" as she felt in her "previous skilled job." *Id.*

[6] The ALJ's opinion, medical records, and Timmons's testimony indicate that she had mild restriction in her daily activities because she was "able to use a computer, watch television, use a [cellphone] and text others, travel, visit [family], drive, leave home, attend church, run errands, shop in stores, go to the bank, manage her finances, and read the bible." Doc. 3-3 at 38. Timmons's own written report also indicated that she could "care for her pets, watch television, do laundry, do housework, load the dishwasher, manage her personal care, prepare simple meals, drive, shop online, sew, and read." *Id.*

(noting that the "ALJ determined that, based on the vocational expert's testimony, [claimant] was capable of working" in less skilled jobs and was considered "not disabled"). Because the ALJ's rationale was adequate, the court will not disturb the credibility determination. *See Lewis*, 125 F.3d at 1440; *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Moreover, as to the ALJ's determinations related to Timmons's treating physicians, an ALJ may disregard a treating physician's opinion for good cause. Critically, the court will not second guess the ALJ about the weight the treating physician's opinion deserves so long as she articulates a specific justification for it. *See Moore*, 405 F.3d at 1212. The ALJ did so in this case. The records indicate that there is ample evidence that Timmons could perform a range of medium tasks and errands, which is contrary to the opinions of the treating physicians' letters and records. Therefore, the court finds no reversible error.

B. <u>Whether the Appeals Council erred by failing to review new purportedly relevant evidence</u>

Timmons argues also that the Appeals Council erred by failing to review evidence she submitted on appeal. Doc. 5 at 16-19. In general, a claimant may present new evidence in support of her application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the

case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (quoting 20 C.F.R. § 404.970(b) (effective through January 16, 2017)).[7] "New evidence is chronologically relevant if it 'relates to the period on or before the date of the ALJ's hearing decision.'" *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (quoting 20 C.F.R. § 404.970(b)).

Here, the Appeals Council found correctly that the new records from Crestwood Medical Center[8] and Dr. Penland[9] were not chronologically relevant. Doc. 3-3 at 2. The records at issue are dated from November 5, 2015 and December 15, 2015, which is after the ALJ's decision. *Id.* at 2-4. Furthermore, these records do not describe Timmons's "mental symptoms during the relevant period," and note instead that the hospitalization at issue was primarily prompted by Timmons's recent "bout of stress" and "chief complaint" related to the ALJ's decision to deny her social security benefits. Doc. 3-3 at 10-21. *See Hargress*, 883

---

[7] 20 C.F.R. § 404.970 was amended effective January 17, 2017. *See* 81 FR 90987-01. The court relies on the prior version of 20 C.F.R. § 404.970 that was in effect on October 29, 2015 when the AC denied review in Timmons's case.

[8] According to the Crestwood Medical Records, Timmons complained primarily about not being "eligible for social security benefits," and expressed suicidal thoughts because her "disability was recently denied." Doc. 3-3 at 21. The records indicate that Timmons was "attentive and cooperative" and she was "referred to outpatient treatment [after] safety issues [were] addressed." *Id.* at 24.

[9] Dr. Penland provided a Mental Residual Functional Capacity report after the Crestwood Hospitalization in November 2015, in which he notes that Timmons's "last bout of stress resulted in severe suicidality requiring hospitalization." Doc. 3-3 at 10-13. As the Appeals Council suggested, whether this assessment establishes that Timmons is disabled is an issue for a "new claim for disability" to determine if Timmons was "disabled after October 29, 2015." *Id.*

F.3d at 1309-10. Because the Appeals Council is not required to "provide a detailed discussion of a claimant's new evidence," it is sufficient for the Appeals Council to state that the "submitted records are about a later time and, therefore, do not affect the decision about whether a claimant was disabled at the time of the ALJ hearing." *See Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 968 (11th Cir. 2018). Thus, the Appeals Council properly declined to consider the new records from Crestwood Medical Center and Dr. Penland on the grounds that they are not chronologically relevant.

## **CONCLUSION**

Based on the foregoing, the court concludes that the ALJ's determination that Timmons is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 19th day of September, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE